IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM FREDERICK MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 21-03218-CV-S-WBG |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION AFFIRMING THE ACTING COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff William Frederick Miller's appeal of Defendant Acting Commissioner of Social Security's final decision denying his application for disability insurance benefits. After carefully reviewing the record and the parties' arguments, the Acting Commissioner's decision is **AFFIRMED**.

### I. BACKGROUND

Plaintiff was born in 1978 and has a limited education.[2] R. at 31, 74-75, 160, 206. He previously worked as a charcoal burner and a sawmill worker. R. at 31, 78. In April 2019,[3] Plaintiff protectively applied for disability insurance benefits, alleging he became disabled on

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is automatically substituted for former Commissioner of the Social Security Administration Andrew Saul as Defendant in this suit.

[2] Plaintiff left school after the eighth grade. R. at 74-75, 206.

[3] Plaintiff previously applied for disability insurance benefits in December 2015 and supplemental security income benefits in May 2016. R. at 17, 88-99, 107-18. After a hearing before an Administrative Law Judge, an unfavorable decision was issued on January 31, 2018, denying both applications. *Id*. Plaintiff did not appeal this decision. R. at 17. In July 2018, Plaintiff again applied for disability insurance benefits. R. at 17, 250. An unfavorable decision was issued on September 20, 2018. R. at 17, 191, 250. As no appeal was undertaken, the agency's determination became the final decision of the Commissioner of Social Security through September 20, 2018. R. at 17.

December 8, 2015.[4]  R. at 17, 160-66.  In October 2019, his application was denied.  R. at 133-37. Plaintiff then requested a hearing before an administrative law judge ("ALJ").  R. at 138-39.

On October 20, 2020, ALJ Mark Clayton held a telephone hearing during which Plaintiff, Plaintiff's wife, and a vocational expert testified.  R. at 38-84.  Thereafter, on November 25, 2020, the ALJ issued a decision finding Plaintiff is not disabled.  R. at 14-37.  He concluded Plaintiff's severe impairments are "status-post 2015 left hip fracture and open reduction/internal fixation (ORIF) surgical repair; degenerative changes to the cervical, thoracic, and lumbar spine, with radiculopathy; and mental impairments, variously described as depression, anxiety, post-traumatic stress disorder (PTSD), and borderline intellectual functioning (BIF)."  R. at 20.  Additionally, he found Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR § 404.1567(b), with the following additional limitations:

> [P]ush/pull and reach as to the right (dominant) upper extremity are limited to occasional; no climbing ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional stoop, kneel, crouch, crawl; no balancing on narrow, moving, irregular, or slippery surfaces, but would have no limitation balancing on level, stationary surfaces, such as the floor; avoid even moderate exposure to hazards, such as unprotected heights and working around dangerous, moving unguarded machinery; can understand, remember, and carry out simple instructions and maintain concentration, persistence, or pace on simple tasks, in an environment where social interaction is not a primary job function.  Additionally, the claimant would be capable of occasional social interaction and can adapt to changes in a routine, noncomplex work setting that are predictable and introduced gradually.

R. at 25.  Based on his review of the record, his RFC determination, and the hearing testimony, the ALJ concluded Plaintiff is not disabled and can work as a fruit distributor, bakery worker, and laminating machine off-bearer.  R. at 32.  Plaintiff unsuccessfully appealed the ALJ's decision to the Appeals Council.  R. at 1-8.  He now appeals to this Court.  Doc. 1.

---

[4] Plaintiff later amended his disability onset date to April 1, 2019, and, by way of second amendment, to October 28, 2018.  R. at 17, 41-42, 76, 177, 189.

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Turpin v. Colvin*, 750 F.3d 989, 992-93 (8th Cir. 2014). The Court must affirm the Commissioner's decision if it is supported by substantial evidence in the record as a whole. *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016). The threshold for such evidentiary sufficiency is not high. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion." *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (citation omitted).

"As long as substantial evidence supports the ALJ's decision, [a reviewing court] may not reverse because substantial evidence also 'would have supported a contrary outcome, or because [the court] would have decided the case differently.'" *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) (quoting *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015)). In evaluating for substantial evidence, a court must consider evidence that supports the Commissioner's decision as well as evidence that detracts from it. *Anderson v. Astrue,* 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). "If, after reviewing the entire record, it is possible to draw two inconsistent positions, and the Commissioner has adopted one of those positions, [the court] must affirm." *See id.*

## III. DISCUSSION

Plaintiff's sole issue[5] on appeal is whether the ALJ properly evaluated Plaintiff's mental impairments.[6] Doc. 15 at 6-13. Specifically, he contends the ALJ did not properly consider the

---

[5] Plaintiff does not appeal the ALJ's findings related to his physical limitations. *See* Doc. 15.

[6] Plaintiff's brief suggests the ALJ erred by finding his traumatic brain injury ("TBI") is non-severe. *See id.* at 7-8. However, he does not raise a step two argument, and he concedes the ALJ found "the manifestations of the brain injury" are severe. *Id.* at 8; *see also* R. at 20-21. Accordingly, the Court does not address the ALJ's severity determination of Plaintiff's TBI.

3
Case 6:21-cv-03218-WBG   Document 17   Filed 12/19/22   Page 3 of 12

medical opinions of Michael Whetstone, Ph.D.; Steve Adams, Psy.D.; and Bryce Gray, Psy.D. *Id*. at 8-9.  He alleges the ALJ erred by failing to explain how the "three opinions which are all similar and make the same diagnoses with similar restrictions can all be consistent with one another and yet not credible." *Id*. at 10.  The Acting Commissioner contends the ALJ "properly evaluated the opinions in accordance with the regulation requirements," and the regulation "does not *require* the ALJ to specifically discuss the consistency of medical opinions with each other."  Doc. 16 at 15-16 (emphasis in original).

A.      **Standard for Medical Opinions**

Under the applicable regulations, no single medical opinion or source is given deference or any specific evidentiary weight, including controlling weight.  20 C.F.R. § 404.1520c(a).[7] Instead, the ALJ evaluates the persuasiveness of medical opinions by considering five factors: supportability,[8] consistency,[9] relationship with the claimant (including length, extent, and purpose of treatment relationship; frequency of examinations; and whether there is an examining relationship), specialization, and "other factors that tend to support or contradict a medical opinion . . . ."  *Id.* §§ 404.1520c(a), 404.1520c(c)(1)-(5).  When evaluating a medical opinion's persuasiveness, supportability and consistency are the "most important factors."  *Id*. § 404.1520c(a).

An ALJ must articulate how persuasive he or she finds all medical opinions.  *Id*. § 404.1520c(b).  Three "articulation requirements" must be satisfied.  *Id.* § 404.1520c(b)(1)-(3).

---

[7] Because Plaintiff filed his application after March 27, 2017, 20 C.F.R. § 404.1520c applies.

[8] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).

[9] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2).

First, "when a medical source provides multiple medical opinion(s) . . . [the ALJ] will articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors" identified above. *Id*. § 404.1520c(b)(1). Second, the ALJ must "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions." *Id*. § 404.1520c(b)(2). Third, when the ALJ finds "two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ] will articulate how [he or she] considered the other most persuasive factors" set forth above. *Id*. § 404.1520c(b)(3).

**B.      Medical Opinions Relevant to Plaintiff's Appeal**

    **(1)      Michael Whetstone, Ph.D.**

In August and September 2017, Plaintiff saw Dr. Whetstone for a neuropsychology consultation and assessment. R. at 386-91. According to Dr. Whetstone, Plaintiff's IQ is "within a low average range," and his "strongest score was in the visual perceptual area." R. at 385. But "[a]ll other performances were at or below the 5th percentile." *Id*. Plaintiff "demonstrated severe deficiency in attention and deficits in immediate and delayed memory," and his "[e]xpressive language abilities were also weak." *Id*. At the conclusion of the neuropsychological assessment, Dr. Whetstone indicated he did not plan to continue to meet with Plaintiff. R. at 386. There is no indication in the record that Plaintiff was treated or seen by Dr. Whetstone after the neuropsychological assessment in 2017 and after his amended disability onset date of October 28, 2018.

In October 2020, Dr. Whetstone completed a Medical Source Statement – Mental ("MSSM"). R. at 652-56. He opined Plaintiff is "markedly" limited[10] in his abilities to "remember

---

[10] "Markedly limited" means "[n]o useful ability to function in this area." R. at 652.

locations and worklike procedures"; "understand and remember very short and simple instructions"; "understand and remember detailed instructions"; "to carry out detailed instructions"; "maintain attention and concentration for extended periods of time"; "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; "complete a normal workday and work week without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods"; and "respond appropriately to changes in the work setting." R. at 652-55. Relatedly, he indicated Plaintiff is unable to perform the following mental activities on a sustained[11] basis: understand, remember, and carry out simple instructions; make simple work-related decisions, and deal with changes in a routine work setting. R. at 656.

Dr. Whetstone also indicated Plaintiff is "sometimes" limited[12] in his abilities to "carry out very short and simple instructions," "sustain an ordinary routine without special supervision," "interact appropriately with the general public," "be aware of the normal hazards and take appropriate precautions," "travel in unfamiliar places or use public transportation," and "set realistic goals or make plans interpedently of others." R. at 653-54, 656. He opined Plaintiff is "not significantly" limited[13] or has no limitations in his abilities to, among other things, "work in coordination with or proximity to others without being distracted by them," "make simple work-related decisions,"[14] "ask simple questions or request assistance," and "accept instructions and respond appropriately to criticism from supervisors." *See* R. at 654-55.

---

[11] "Sustained work activity" is "work that is performed on a 'regular and continuing basis,' that is, 8 hours a day, for 5 days a week." R. at 656.

[12] "Sometimes limited" means "[g]enerally acceptable but would have lapses for 15-20% of an eight hour work day." R. at 652.

[13] "Not significantly limited" means the "[a]bility to function in this area is limited but satisfactory." R. at 652.

[14] Although Dr. Whetstone stated Plaintiff's ability to make work-related decisions is not significantly limited, the Court notes Dr. Whetstone, in the same document, opined Plaintiff does not have the capacity to make simple work-related decisions. R. at 654, 656.

**(2) Steve Adams, Psy.D.**

In October 2018, Dr. Adams conducted a psychological evaluation of Plaintiff for consideration of Medicaid benefits.[15] R. at 272-75. He observed Plaintiff was oriented to person, place, day, date, and time, and was "alert and responsive." R. at 274. Plaintiff's mood was euthymic, affect was "consistent with conversation and facial expression," and his speech was "clear and normally paced." *Id*. Dr. Adams noted Plaintiff's "general fund of information was below average," and verbal and abstract concepts were understood or verbalized at "a below average level." R. at 274-75. Accordingly, Dr. Adams opined Plaintiff "does not seem able to understand and remember simple instructions" or "sustain his concentration and persistence on simple tasks." R. at 275. Further, he found Plaintiff "does not seem to be able to interact in moderately demanding social situations" or "adapt to a typical work environment." *Id*. Dr. Adams recommended a neuropsychological evaluation. *Id*.

**(3) Bryce Gray, Psy.D.**

In September 2019, Plaintiff underwent a psychological consultative examination with Dr. Gray. R. at 479-84. Dr. Gray reviewed, among other things, Dr. Adams's psychological evaluation, and he conducted a clinical interview, mental status examination, and the Wechsler Adult Intelligence Scale-Fourth Edition ("WAIS-IV"). R. at 479. He found Plaintiff was "alert and oriented to person, place, and situation," and had an "open" attitude "toward the evaluator and the evaluation." R. at 481. His thought process was linear, and current judgment and insight were good. *Id*. Plaintiff was "able to recall three unrelated words . . . immediately and was able to recall one out of three of those same words after brief delay, indicating impaired delay memory." *Id*.

---

[15] The diagnostic interview and mental status exam was completed by Diane White, LPC. *See* R. at 275. However, all data including, but not limited to, "psychological testing and diagnosis" were "reviewed, interpreted and approved by" Dr. Adams. *Id*.

According to Dr. Gray, the WAIS-IV revealed Plaintiff has "extremely low" verbal comprehension and "low average" perceptual reasoning. *Id*. His working memory, processing speed, full scale, and general ability were all borderline. *Id*. Dr. Gray opined Plaintiff's cognitive abilities "cannot easily be summarized because his nonverbal reasoning abilities are much better developed than his verbal reasoning abilities." R. at 482. He concluded Plaintiff "needs directions to be simplified and repeated as necessary," and the directions should be verbal because "he struggles with reading directions." R. at 483. Dr. Gray diagnosed Plaintiff with depressive disorder due to another medical condition; borderline intellectual functioning; and neurocognitive disorder due to TBI. *Id*.

Dr. Gray noted Plaintiff has "fair social skills but has no desire to interact with others," limited adaptability, a "mild to moderate impairment for sustained concentration and persistence in simple and repetitive tasks," "moderate to marked impairment of retaining information and effectively carrying out instructions that are multi-step and complex." R. at 483. Further, according to Dr. Gray, Plaintiff has a "moderate to marked impairment in his ability to reason and make work related decisions due to his low cognitive ability and memory issues," and a "mild impairment managing oneself but is reliant upon his wife to handle the finances." R. at 483. In Dr. Gray's opinion, Plaintiff's "overall functional capacity" is moderately impaired. R. at 483.

C.  **The ALJ's Consideration of the Medical Opinions Identified by Plaintiff**

The ALJ concluded Dr. Whetstone's opinion was unpersuasive as it was "not supported by or consistent with the available evidence during the relevant period." R. at 21. He observed Dr. Whetstone's MSSM, which was executed in October 2020, was based on observations of Plaintiff in "mid-2017." *Id*. During the three years that lapsed between the evaluation and the MSSM, Plaintiff had "not seen Dr. Whetstone," and "no clinical evidence from the relevant period herein was submitted from Dr. Whetstone." *Id*. Further, he noted Dr. Whetstone's evaluation and opinion

8

Case 6:21-cv-03218-WBG    Document 17    Filed 12/19/22    Page 8 of 12

were "reviewed, considered, and . . . weighed in great detail by the [ALJ] in the prior unfavorable decision dated January 31, 2018, which is administratively final; the prior adjudicator finding this alleged impairment 'non-severe' in nature at that time." *Id*.

Plaintiff argues this matter must be remanded because the ALJ did not consider Dr. Whetstone's opinion. Doc. 15 at 8. On the contrary, the ALJ considered and fully analyzed the opinion. R. at 21. Dr. Whetstone only evaluated Plaintiff once – more than one year prior to the amended onset date. And Dr. Whetstone's MSSM was completed more than three years after said evaluation with no follow-up treatment or examination.

The ALJ also found Dr. Whetstone's opinion was not consistent with the available evidence during the relevant period. *Id*. In doing so, he compared Dr. Whetstone's evaluation with numerous medical records during the relevant time period which showed mostly normal mental status examinations and conservative mental health treatment. *Id*. For example, in February 2019, a physician noted Plaintiff "has been essentially unchanged from a mental standpoint," his "mood is a lot better on his antidepressant," and he was observed as "[a]lert, oriented" with "appropriate mood, affect, judgement, insight." R. at 285. And between March 2019 and August 2020, Plaintiff had "no acute mood changes." R. at 305, 314, 466, 489, 510, 521, 532, 543, 554, 565. In November 2019, Plaintiff's emotional ability, headaches, and memory problems were "actually doing quite a bit better," and relevant to this appeal, he denied "trouble concentrating." R. at 617. He displayed appropriate mood and affect, judgment, and insight. *Id.* Furthermore, in May 2020, he denied "any significant depression or anxiety, irritability, or other mood changes," and had appropriate "mood and affect, judgement and insight." R. at 610. Similarly, in August 2020, Plaintiff reported his "[m]ood and memory [were] stable" and he remained functional. R. at 592.

With regard to Drs. Adams and Gray, the ALJ found their opinions were persuasive to the extent they could be "interpreted as consistent with the [prior administrative medical finding] of the state agency psychological consultant"[16] and "also supported by and consistent with the relatively routine nature of [Plaintiff's] psychiatric treatment and the reported effectiveness of his medication regimen in improving his symptoms." R. at 30 (citing B1F (R. at 272-77); B2F/8-9 (R. at 285-86); B3F/7-8, 16-17, 25, 29 (R. at 305-06, 314-15, 323, 327); B5F/6-7 (R. at 466-67); B6F (R. at 479-85); B7F/4, 25, 36, 47, 58, 68-69, 80, 91 (R. at 489, 510, 521, 532, 543, 553-54, 565, 576); B8F/8, 26, 33-34, 40-41, 63-64 (R. at 592, 610, 617-18, 624-25, 647-48)). He found the opinions unpersuasive to the extent either could be "interpreted as supporting the presence" of disability, specifically noting Dr. Adams's opinion (identified by the ALJ as the "Cornerstone Counseling provider") was generated "for the purposes of determining state Medicaid eligibility and, as such, is conclusory in nature, invading the province of the Commissioner." R. at 30. In addition, the ALJ concluded the "findings that are more pronounced in nature (i.e., 'Judgment is poor. Impulse control is poor.') were not consistently demonstrated throughout the available evidence," "nor would such findings be consistent with the ability of [Plaintiff] to be the primary adult caregiver to three young children for whom he and his wife served as guardians until adoption recently became finalized." R. at 30 (citing B5E (R. at 218-228); B1F (R. at 272-77); B6F (R. at 479-85); Hearing Testimony (R. at 38-84)).

---

[16] In October 2019, Steve Akeson, Psy.D., a state agency psychological consultant, opined Plaintiff is markedly limited in his ability to "understand and remember detailed instructions," and "carry out detailed instructions." R. at 130. He also concluded Plaintiff is moderately limited in his ability to "maintain attention and concentration for extended periods," "work in coordination with or in proximity to others without being distracted by them," "interact appropriately with the general public," "respond appropriately to changes in the work setting," and "set realistic goals or make plans independently of others." R. at 130-31. In all other areas of mental function, Plaintiff is "[n]ot significantly limited. R. at 130-31. According to Dr. Akeson, Plaintiff retained the ability to "understand and remember simple work instructions," "concentrate and persist in simple work tasks," "respond to normal work place changes that are anticipated and introduced slowly," and would do best "in a work environment that required little social contact." R. at 130-31. The ALJ found Dr. Akeson's opinion to be persuasive as it was "supported by and generally consistent with the available evidence." R. at 30.

Plaintiff also argues the ALJ erred by failing to consider the "extent to which the [doctor's opinions] bolstered one another." Doc. 15 at 8. On the contrary, the ALJ properly evaluated the persuasiveness of the medical opinions by considering, among other things, whether the opinions were supported by and consistent with the record. *See* 20 C.F.R. § 404.1520c(b)(2). The ALJ also identified the reasons he gave each opinion less than substantial weight. *See Pemberton v. Saul*, 953 F.3d 514, 517 (8th Cir. 2020) (noting if a physician's opinion is "internally inconsistent or conflicts with substantial evidence contained within the medical record as a whole, the ALJ may afford it less weight."). Contrary to Plaintiff's contention, the ALJ was not required to compare the three doctors' opinions. Consistent with the applicable regulations, the ALJ properly considered the supportability and consistency factors of the three medical opinions in his determination to find them – in part – unpersuasive.

The ALJ is "free to accept some, but not all, of a medical opinion." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) (citations omitted). Furthermore, an ALJ is "not required to explicitly . . . reconcile every conflicting shred of medical evidence." *Id*. (internal quotation marks and citation omitted). On review, this Court does not reweigh the evidence before the ALJ. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Even if a reviewing court would weigh the evidence differently, the reviewing court must nonetheless affirm the denial of benefits if there is substantial evidence to support the ALJ's finding. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).

After a careful review of the record, the Court finds the ALJ's evaluation of the medical opinions in this case is consistent with regulatory requirements. As detailed above, Dr. Whetstone's opinion, as well as the portions of Dr. Adams's and Dr. Gray's opinions that were rejected by the ALJ, were not supported by and/or consistent with the available medical record,

and substantial evidence in the record supports the ALJ's decision to find their opinions "unpersuasive."

## IV. CONCLUSION

For the foregoing reasons, the Court finds the Acting Commissioner's decision is supported by substantial evidence on the record as a whole, and therefore, is **AFFIRMED**.

**IT IS SO ORDERED.**

DATE: December 19, 2022  /s/ W. Brian Gaddy
W. BRIAN GADDY
UNITED STATES MAGISTRATE JUDGE